NOT FOR PUBLICATION (Doc. Nos. 38, 39)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| OREADER CALLAWAY, JR., | : | |
| Plaintiff, | : | Civil No. 12-5477 (RBK/KMW) |
| v. | : | **OPINION** |
| NEW JERSEY STATE POLICE TROOP A et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the Motion to Dismiss, of Defendants Booth, McCreen, Moorehouse, Streater, Coia, Kite, and Bobo (collectively "Defendants"), Plaintiff Oreader Callaway, Jr.'s ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 38), and Plaintiff's proposed Third Amended Complaint. (Doc. No. 39.) In his SAC, Plaintiff attempts to state claims pursuant to 42 U.S.C. § 1983 for coercive interrogation, denial of medical care, and excessive force in violation of the Constitution. For the reasons discussed herein, Defendants' Motion to Dismiss will be granted.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

In late June 2012 Plaintiff was arrested for possessing stolen property. According to Plaintiff's SAC, while Plaintiff was detained in a holding cell at the New Jersey State Police

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Accordingly, the following facts are taken from Plaintiff's SAC. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

barracks in Bridgeton, New Jersey ("Bridgeton"), on June 30, 2012, Defendant Booth walked into Plaintiff's cell, grabbed him from behind, and lifted him off his feet. (SAC at 1-2.) As a result, Plaintiff's rib was "disfigured or possibly broken," and Plaintiff suffered "excruciating pain." (Id. at 2.) Booth apparently grabbed and lifted Plaintiff because he "did not like" the answers Plaintiff provided to McCreen while being questioned about stolen property. (Id. at 2.) Defendant Moorehouse was also present in Plaintiff's cell when Booth picked him up and injured him. (Id. at 3-4.)

Shortly thereafter, Plaintiff asked McCreen for medical attention, which McCreen ignored. (Id. at 2.) Instead, McCreen made threatening remarks, which placed Plaintiff in "imminent fear." (Id.) After four to six hours, during which Plaintiff received no medical treatment, McCreen returned to Plaintiff's cell along with "several other troopers," including Defendant Streater, to ask Plaintiff how he came across the stolen property he had in his possession at the time of the arrest. (Id. at 3-4) Not content with Plaintiff's answers, McCreen made some insulting and threatening remarks, took Plaintiff's shoes, and denied Plaintiff's request for any food or water. (Id. at 3.)

Later on June 30, 2012, Plaintiff was transferred by McCreen and Booth to the Woodstown State Police Barracks in Woodstown, New Jersey ("Woodstown"), about ten to fourteen hours after his initial arrest. (Id. at 4.) Upon arriving at Woodstown Plaintiff asked Coia for water and medical assistance, who ignored Plaintiff's request. (Id. at 4-5.)

Coia instead told Plaintiff to face the wall and place his hands over his head. (Id. at 5.) Plaintiff explained to Coia that he could not place his hands above his head, due to having received multiple prior surgeries on his right shoulder, which left it immobilized, and the fact that he was still experiencing pain in his ribs from the earlier incident at Bridgeton. (Id.) At that

2

point, Kite, Bobo, and Booth lifted Plaintiff's arms over his head, causing him to scream in pain. (Id. at 5-6.) Plaintiff tried explaining to Kite and Bobo that "his arms could not go past 20 degrees" because of the previous injury from that day and his prior surgeries. (Id. at 5-6.) Rather than heeding Plaintiff's pleas, Kite and Bobo lifted Plaintiff's arms over his head,[2] causing pain and suffering. (Id. at 6.) As a result of both the assault and the act of forcibly placing Plaintiff's hands over his head, Plaintiff continues to suffer pain and possible disfigurement. (Id. at 6-7.)

On August 30, 2012, Plaintiff filed his original Complaint and in forma pauperis ("IFP") application. (Doc. No. 1.) The Court granted Plaintiff's IFP application and, after performing a 28 U.S.C. § 1915 review, dismissed several claims from Plaintiff's original Complaint on April 9, 2013. (Doc. No. 3.) Plaintiff then filed his First Amended Complaint ("FAC") on May 3, 2013. (Doc. No. 6.)

Defendants Bobo, Booth, Coia, Demarco, Hider, Kite, Moorehouse, and Streater filed a Motion to Dismiss the FAC on December 26, 2013. (Doc. No. 31.) The Court granted Defendants' Motion to Dismiss the FAC in part on August 5, 2014 (August 5 Order), and ordered Plaintiff to file a Second Amended Complaint to address certain pleading deficiencies. (Doc. No. 34.) In the August 5 Order, Plaintiff was granted thirty days from the date of the Order in which to file his SAC, and to the extent he filed a SAC, "include every claim that he seeks to amend, identify each and every defendant that he seeks to sue, and ensure that the [SAC] is complete in itself." (Id. (emphasis added).)

---

[2] Plaintiff's SAC actually states that Kite "grabbed plaintiff's left arm and lifted it over his head," despite Plaintiff alleging in several places that it was his right shoulder and arm that were immobile and in pain. (SAC at 6.) However, because Plaintiff also previously alleged that Kite and Booth lifted Plaintiff's "arms" over his head, (id. at 5), the Court will accept that Kite participated in lifting the arm that caused Plaintiff severe pain for purposes of deciding this Motion.

On August 14, 2014, Plaintiff filed his SAC, in which he alleges claims against Defendants Bobo, Booth, Coia, Kite, McCreen, Moorehouse, and Streater.  (Doc. No. 35.) Specifically, Plaintiff attempts to state claims under 42 U.S.C. § 1983 for violations of his rights under the Fourteenth Amendment based on coercive interrogation, failure to provide medical treatment, and excessive force.  Defendants filed the present Motion to Dismiss certain counts in the SAC on September 18, 2014.  (Doc. No. 38.)  Therein, Defendants move to dismiss all counts to the extent they are against the Defendants in their official capacities, the claim for coercive interrogation against all Defendants, the failure to provide medical care claim against Booth, Moorehouse, Bobo, and Kite, and the excessive force claim against Streater.

Rather than file a timely response to the present Motion, on September 30, 2014, Plaintiff filed a putative Third Amended Complaint (the "proposed TAC").  (Doc. No. 39.)  In Plaintiff's proposed TAC he asserts what appear to be brand new claims against one Jennifer Webb-McRae of the Cumberland County Prosecutor's Office and Defendant McCreen, in which he raises issues involving the failure to disclose exculpatory evidence prior to state court hearings in October 2013 and June 2014.  (See Doc. No. 39.)  Then, on October 23, 2014, Plaintiff submitted an untimely response to Defendants' Motion to Dismiss.  (Doc. No. 41.)

Because the issues have been briefed by the parties, the Court will proceed to discuss the merits of the present Motion to Dismiss and Plaintiff's attempt to amend the SAC.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

4

may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips, 515 F.3d at 233). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

5

### III. DISCUSSION

Section 1983 affords a cause of action for certain violations of an individual's constitutional rights. The statute provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Additionally, a state official acting in his or her official capacity is not a "person" amenable to suit under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). A suit against a state official acting in his or her official capacity "is not a suit against the official but rather is a suit against the official's office." Id. Such a suit is no different than a suit against the State itself, and § 1983 was not intended to override the well-established common law immunity for states being sued without their consent. Id.

Plaintiff does not specify in his SAC whether he is suing Defendants in their official or unofficial capacities. Accordingly, to the extent that that he attempts to sue them in their official capacities, Defendants are not "persons" amenable to suit pursuant to § 1983 and those claims will be dismissed with prejudice. To the extent that Defendants are being sued in their unofficial capacities, the Court proceeds to discuss Defendants remaining arguments in favor of dismissal.

## a. Coercive Interrogation

Plaintiff apparently asserts that the circumstances of his interrogation amounted to a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.  See, e.g., Chavez v. Martinez, 538 U.S. 760, 774 (2003) (under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47, n.8 (1998) (substantive due process rights are violated only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience"); Miller v. Fenton, 474 U.S. 104, 109 (1985) ("certain interrogation techniques, either in isolation or as applied to unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment"); Rochin v. California, 342 U.S. 165 (1952) (due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump).

The Third Circuit has held that to establish a violation of substantive due process rights, the action alleged must be "so ill-conceived or malicious that it shocks the conscience." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) (quoting Lewis, 523 U.S. at 846). Mere negligence is not sufficient to meet this standard. Lewis, 523 U.S. at 847. The standard often used by the Supreme Court to determine whether an action has reached that level is the "deliberate indifference" standard. Id. at 851. The Third Circuit acknowledged that the meaning of this "shocks the conscience" standard varies depending on the factual context of the case. Miller, 174 F.3d at 375; see also United Artists Theatre Cir., Inc. v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000) ("A

7

plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred").

Typically, "conscience shocking" provides relief for physical abuse. See Rochin, 342 U.S. 165 (due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump). Some courts have suggested that "conscience shocking" behavior must be either physically intrusive or violent, or strike at the basic fabric of a protected relationship, such as a parent-child relationship. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000). For instance, in the few cases where interrogation alone has supported a conscience-shocking claim, there have usually been at least some allegations of physical force or abuse. In Chavez, the Supreme Court remanded the case to the Ninth Circuit to determine whether a suspect had a "shocks the conscience" claim against police for conduct during the interrogation. The Ninth Circuit allowed the claim based in part on implications of physical abuse allegations that the officer had interfered with the medical treatment of the plaintiff while he screamed in pain. Martinez v. City of Oxnard, 337 F.3d 1091, 1092 (9th Cir. 2003).

Based on Plaintiff's allegations, the Court is unable to find that the interrogation tactics used by Defendants rose to the level of a coercive interrogation that shocks the conscience and resulted in a federal constitutional deprivation. First, Plaintiff was not interrogated for hours. The record reveals he was only questioned about the stolen property twice, each time by McCreen. Regarding the two interrogations, one occurred around the time Plaintiff arrived at Bridgeton and one occurred around four to six hours after his arrest. These two instance of questioning took place during what Plaintiff has described as a ten to fourteen hour ordeal in both Bridgeton and Woodstown.

Plaintiff was not physically abused or harmed during the interrogation sessions, although he does state that Booth assaulted him, causing damage and pain to his ribs, after Plaintiff had been interrogated by McCreen the first time and was returning to his cell. McCreen allegedly refused to provide Plaintiff with medical care, food, or water after the assault, and throughout the remainder of the day. However, when McCreen interrogated Plaintiff for the second time, his only retaliation was apparently insulting Plaintiff, telling Plaintiff he should spend his life in prison, and taking his shoes. Plaintiff tacitly admits that he did not feel compelled to talk to Defendants, as he denied their charges and gave his own story concerning why he was in possession of stolen property. No confession or admissions were elicited from Plaintiff during these two interrogations.

Viewed individually and as a whole, the Court finds that the interrogations were not so egregious or outrageous that it may be fairly said to shock the contemporary conscience. The questioning was not unreasonably aggressive, it only occurred twice over the course of four to six hours, and only included a few questions about stolen property. Plaintiff experienced one instance of physical force used against him, but the SAC states that it was at the hands of Booth, rather than McCreen, the only defendant who was apparently doing the interrogating. While McCreen's own actions may have been inappropriate, they do not verge on the despicable or shocking. Furthermore, none of the allegations in the SAC implicate Moorehouse, Streater, Coia, Kite, or Bobo in the supposed coercive interrogation. Accordingly, Plaintiff's coercive interrogation claim will be dismissed with prejudice against all Defendants for failure to state a claim.

### b. Failure to Provide Medical Care

This Court will rely upon the Fourteenth Amendment in analyzing Plaintiff's denial of medical care claim. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243–45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); King v. Cnty. of Gloucester, 302 Fed. App'x 92, 96 (3d Cir. 2008); see also Montgomery v. Ray, 145 Fed. App'x 738, 740 (3d Cir. 2005) ("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, … i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt") (citing Hubbard, 399 F.3d at 158). In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and seventeen non-medical conditions of pretrial detainees. 399 F.3d at 165–67.

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298. … The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007).

In this case, Plaintiff alleges that he was denied medical treatment for an alleged broken rib or torn cartilage for more than fourteen hours without any medical or legitimate justification. However, there is no allegation that Plaintiff requested medical treatment from Booth or Moorehouse while at Bridgeton, and the SAC does not indicate that Plaintiff did so in their presence.  Nor has Plaintiff alleged that he requested medical assistance from Bobo or Kite while at Woodstown, or made such a request in their presence.

It is axiomatic that, in order to be liable in a civil rights action, a defendant must have personal involvement in the commission of the wrong, and Plaintiff "must portray specific conduct by [Defendants] which violates some constitutional right."  Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970)  Moreover, liability "cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor 451 U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).

Because Plaintiff has not pled any actions or omissions on behalf of Booth, Moorehouse, Bobo, or Kite indicating that they knew of his requests for medical treatment or participated in denying those requests, the Court finds Plaintiff has failed to state a claim for denial of medical care against them.  Accordingly, the denial of medical care claim will be dismissed from the SAC against Booth, Moorehouse, Bobo, and Kite.

### c. Excessive Force

Plaintiff also apparently alleges that Defendants used excessive force during their arrest of Plaintiff by lifting him and tearing his ribs and cartilage.  Claims of excessive force during arrests, investigatory stops and other seizures are governed by the Fourth Amendment.  See Graham v. Conner, 490 U.S. 386 (1989); Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir.

11

2004). When construing an excessive force claim, this Court must consider whether the Defendants' use of force was objectively reasonable under the circumstances, regardless of the their underlying motive or intentions. Graham, 490 U.S. at 397. However, as noted above in the Court's discussion of Plaintiff's denial of medical care claim, Plaintiff must plead facts indicating that each Defendant was actually involved in, or failed to intervene in the use of force in order to hold each Defendant liable. See Gittlemacker, 428 F.2d at 3.

The only contention in the SAC against Streater is that he entered Plaintiff's cell in the course of McCreen's second interrogation, during which no physical altercation was alleged to have taken place. There are no other allegations suggesting Streater was involved in any acts or omissions with respect to excessive force used against Plaintiff. Accordingly, the Court finds that Plaintiff has failed to state a claim for use of excessive force against Streater, and that claim will be dismissed against Streater from the SAC.

## IV.    LEAVE TO AMEND

Though Plaintiff submitted a proposed TAC on September 30, 2014, the Court finds that Plaintiff failed to comply with the plain instructions contained in its August 5 Order, and the Court will deny Plaintiff's attempt to amend the SAC. Further, because this lawsuit was filed in August 2012 and Plaintiff has had ample opportunity to add or litigate new claims, the Court will deny Plaintiff leave to further amend the SAC.

In the August 5 Order Plaintiff was instructed to include "each and every claim" and "every defendant that he seeks to sue" in the amended complaint he was permitted to file by September 5, 2014. When Plaintiff filed his SAC on August 14, 2014, he removed Defendants Demarco and Hider, reasserted claims against McCreen, and clarified several factual details concerning his claims. Plaintiff's SAC was timely, and complied with this Court's Order.

However, Plaintiffs proposed TAC, filed twenty-five days after the deadline set by the Court, added a new defendant from the Cumberland County Prosecutor's Office and brand new, unrelated claims regarding hearings which apparently occurred in collateral state court criminal proceedings.  The proposed TAC also makes clear that Plaintiff was aware of the circumstances relevant to these new claims prior to this Court's August 5 Order, based on the allegations contained therein.  There is no indication that Plaintiff has any excuse for failing to include these claims in his SAC.

Because the Defendant has previously amended his Complaint twice in this matter, failed to abide by this Court's August 5, 2014, Order when he filed the proposed TAC, did not properly move to amend his SAC under Fed. R. Civ. P. 15(a)(2), and cannot argue that he was previously unaware of the allegations put forth for the first time in the proposed TAC, the Court will deny Plaintiff's attempt to amend his SAC.  Moreover, the Court expresses concern over Plaintiff's attempt to raise claims in his proposed TAC unrelated to the events which took place in Bridgeton and Woodstown on June 30, 2012, and which relate to an ongoing, collateral state criminal proceeding.  However, the Court need not reach that issue, as it will not permit Plaintiff to amend his pleadings any further in this matter.

Normally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  Indeed, even when "a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set

period of time, unless amendment would be inequitable or futile." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

Here, the Court finds that Plaintiff has had several opportunities to plead his claims, and two of them have been in response to Orders and an Opinion of this Court setting forth the deficiencies in Plaintiff's complaints. Plaintiff's facts have only changed insofar as they have specified which Defendants participated in which actions Plaintiff allege occurred, but the underlying circumstances from June 30, 2012, have not substantially changed. Therefore, the Court finds that that any amendment would be futile, and the Court will not grant Plaintiff another opportunity to seek leave to amend his SAC.

Accordingly, Plaintiff's proposed TAC will be denied, and Plaintiff's claims discussed in this Opinion will be dismissed with prejudice in the accompanying Order.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be **GRANTED**. Plaintiff's coercive interrogation claim will be **DISMISSED WITH PREJUDICE** as to all Defendants. Plaintiff's denial of medical care claim will be **DISMISSED WITH PREJUDICE** as to Defendants Booth, Moorehouse, Bobo, and Kite. Plaintiff's excessive force claim will be **DISMISSED WITH PREJUDICE** as to Defendant Streater.


Dated:  3/17/2015  　　　　　　　　　　　　　　　　　 s/ Robert B. Kugler  
　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER  
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge