UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

OREADER CALLWAY, JR., :
:
    Plaintiff, : Civ. No. 12-5477-RBK-KMW
:
v. : **OPINION**
:
NEW JERSEY STATE POLICE TROOP A, et al., :
:
    Defendants. :
:

**ROBERT B. KUGLER, U.S.D.J.**

    This matter is before the Court on a motion by Defendants Jason Bobo, Robert Booth, Robert Coia, Carl Kite, Gerald McCreery, Jason Streater, and Lance Moorehouse (collectively, "Defendants") for summary judgment. Plaintiff Oreader Callaway, Jr.'s Second Amended Complaint brings claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments based on alleged excessive force and denial of medical care. For the reasons expressed below, the Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.    BACKGROUND**

    On June 30, 2012, Plaintiff was arrested for two (2) home style invasions between 6:30 a.m. and 7:00 a.m. by the New Jersey State Police, Bridgeton Barracks. Def.'s Ex. G, Pl.'s Dep., May 30, 2017, at 50:25; 51:1-15. Plaintiff was taken into custody and placed in a cell at the New Jersey State Police barracks in Bridgeton, New Jersey ("Bridgeton"). At some point, Plaintiff alleges, Trooper McCreery came to Plaintiff's cell and ordered him to come out. (Second Am. Compl. ¶ 2.) Plaintiff alleges that Defendants Moorehouse and Booth were

1

present. Pl.'s Dep. 58:4-25; 1-25; 60:1-5. Plaintiff alleges that after he answered some questions he turned to walk back into his cell, at which point Booth walked into Plaintiff's cell, grabbed him from behind, and lifted him off his feet. (Second Am. Compl. at 1–2.) As a result, Plaintiff's rib was "disfigured or possibly broken," and Plaintiff suffered "excruciating pain." (*Id.* at 2.) Booth apparently grabbed and lifted Plaintiff because he "did not like" the answers Plaintiff provided to McCreery while being questioned about stolen property. (*Id.* at 2.)

Shortly thereafter, Plaintiff asked McCreery for medical attention because Plaintiff's rib was "messed up." Pl.'s Dep. 66:11-20. McCreery responded with threatening remarks, which placed Plaintiff in "imminent fear." (Second Am. Compl. at 2.) After four to six hours, during which Plaintiff received no medical treatment, McCreery returned to Plaintiff's cell along with "several other troopers," including Defendant Streater, to ask Plaintiff how he came across the stolen property he had in his possession at the time of the arrest. (*Id.* at 3–4.) Not content with Plaintiff's answers, McCreery made some insulting and threatening remarks, took Plaintiff's shoes, and denied Plaintiff's request for any food or water. (*Id.* at 3.)

Later on June 30, 2012, Plaintiff was transferred by McCreery and Booth to the Woodstown State Police Barracks in Woodstown, New Jersey ("Woodstown"), about ten to fourteen hours after his initial arrest. (*Id.* at 4.); Pl.'s Dep. 71:19-25. Upon arriving at Woodstown Plaintiff alleges that asked Defendant Coia for water and medical assistance. (*Id.* at 4–5); Pl.'s Dep. 73:2-17.

The Sergeant (whom Plaintiff asserts was Coia) instead told Plaintiff to face the wall and place his hands over his head. (*Id.* at 5.) Plaintiff explained to Coia that he could not place his hands above his head, due to having received multiple prior surgeries on his right shoulder, which left it immobilized, and the fact that he was still experiencing pain in his ribs from the

earlier incident at Bridgeton. (*Id.*) At that point, Kite, Bobo, and Booth lifted Plaintiff's arms over his head, causing him to scream in pain. (*Id.* at 5–6.); Pl.'s Dep. 75:8-20. Plaintiff tried explaining to Kite and Bobo that "his arms could not go past 20 degrees" because of the previous injury from that day and his prior surgeries. (*Id.* at 5–6.) Rather than heeding Plaintiff's pleas, Kite and Bobo lifted Plaintiff's arms over his head, causing pain and suffering. (*Id.* at 6.); Pl.'s Dep. 78:10-25. Plaintiff alleges that as a result of both the assault in the cell and the act of forcibly placing Plaintiff's hands over his head, he continues to suffer pain and possible disfigurement. (*Id.* at 6–7.) Defendants deny that force was used against Plaintiff at any time, or that Plaintiff ever requested medical assistance.

On August 30, 2012, Plaintiff filed his original Complaint and in *forma pauperis* ("IFP") application. (Doc. No. 1.) The Court granted Plaintiff's IFP application and, after performing a 28 U.S.C. § 1915 review, dismissed several claims from Plaintiff's original Complaint on April 9, 2013. (Doc. No. 3.) The Court's April 9, 2013, order dismissed McCreery with prejudice. (*Id.*) Plaintiff then filed his First Amended Complaint ("FAC") on May 3, 2013. (Doc. No. 6.)

Defendants Bobo, Booth, Coia, Demarco, Hider, Kite, Moorehouse, and Streater filed a Motion to Dismiss the FAC on December 26, 2013. (Doc. No. 31.) The Court granted Defendants' Motion to Dismiss the FAC in part on August 5, 2014 (August 5 Order) and ordered Plaintiff to file a Second Amended Complaint ("SAC") to address certain pleading deficiencies. (Doc. No. 34.) In the August 5 Order, Plaintiff was granted thirty days from the date of the Order in which to file his SAC, and to the extent he filed a SAC, "include *every claim* that he seeks to amend, identify *each and every defendant* that he seeks to sue, and ensure that the [SAC] is complete in itself." (*Id.* (emphasis added).)

On August 14, 2014, Plaintiff filed his SAC, in which he alleged claims against Defendants Bobo, Booth, Coia, Kite, McCreery, Moorehouse, and Streater. (Doc. No. 35.) Specifically, Plaintiff attempted to state claims under 42 U.S.C. § 1983 for violations of his rights under the Fourteenth Amendment based on coercive interrogation, failure to provide medical treatment, and excessive force. Defendants filed a Motion to Dismiss certain counts in the SAC on September 18, 2014. (Doc. No. 38.) Therein, Defendants moved to dismiss all counts to the extent they are against the Defendants in their official capacities, the claim for coercive interrogation against all Defendants, the failure to provide medical care claim against Booth, Moorehouse, Bobo, and Kite, and the excessive force claim against Streater.

Rather than file a timely response to the Motion, on September 30, 2014, Plaintiff filed a putative Third Amended Complaint (the "proposed TAC"). (Doc. No. 39.) In Plaintiff's proposed TAC he asserted what appear to be brand new claims against one Jennifer Webb–McRae of the Cumberland County Prosecutor's Office and Defendant McCreery, in which he raised issues involving the failure to disclose exculpatory evidence prior to state court hearings in October 2013 and June 2014. (*See* Doc. No. 39.) Then, on October 23, 2014, Plaintiff submitted an untimely response to Defendants' Motion to Dismiss. (Doc. No. 41.)

This Court granted Defendants' motion to dismiss the SAC on March 17, 2015. (Doc. Nos. 44, 45.) Specifically, the Court dismissed Plaintiff's coercive interrogation claim as to all Defendants, dismissed Plaintiff's failure to provide medical care claim against Defendants Booth, Moorehouse, Bobo, and Kite, and dismissed the excessive force claim against Defendant Streater. (*Id.*) The Court also denied Plaintiff's proposed Third Amended Complaint. (*Id.*)

Defendants filed the present motion for summary judgment on October 27, 2017, requesting summary judgment on Plaintiff's remaining excessive force and denial of medical care claims. (Doc. No. 96.) Plaintiff has opposed the motion. (Doc. No. 101.)

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080 (3d Cir.1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Furthermore,

5

"[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner,* 247 F. App'x. 353, 354 (3d Cir. Sept.17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir.2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

## III. DISCUSSION

Defendants argue that there is "no credible evidence in the record" to support Plaintiff's account of the facts surrounding his detention. (Dckt. No. 96-1 at 6.) Specifically, Defendants assert that the trooper defendants testified and otherwise stated in responses to discovery that they did not personally have any physical interaction with Plaintiff during his detention aside from incidental contact during transport. Defendants further argue that Defendants Coia and Streater were not present at the times the events alleged to give rise to Plaintiff's claims occurred. In addition, Defendants assert that Plaintiff did not ask for medical attention and did not appear to require any. Defendants point to investigative and other reports relating to Plaintiff's arrest that do not reflect that force was employed against Plaintiff or that he seemed in any way injured. As such, Defendants argue, Plaintiff cannot establish any violations of his constitutional rights. Plaintiff argues that there remain disputed issues of material fact which preclude summary judgment. Plaintiff's claims are discussed below.

6

### A. Excessive Force

Plaintiff's excessive force claims presently remain against Defendants Booth, Moorehouse, Kite, and Bobo. Defendants argue that Plaintiff has offered no evidence that any force was used against at him at all, let alone excessive force, other than his own self-serving testimony. They contend that his testimony is "blatantly contradicted by the record" and that summary judgment is therefore appropriate. The Court disagrees.

Plaintiff alleges that certain Defendants either used excessive force or failed to intervene to prevent the use of excessive force against Plaintiff while in detention by lifting him from behind and injuring his ribs and cartilage. Claims of excessive force during arrests, investigatory stops and other seizures are governed by the Fourth Amendment. *See Graham v. Conner,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Rivas v. City of Passaic,* 365 F.3d 181, 198 (3d Cir.2004). While the use of force upon a post-arraignment, pretrial detainee is analyzed under the Fourteenth Amendment, *see Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d Cir. 2005), "a person continues to be an arrestee subject to the Fourth Amendment protection through the period of post-arrest but prearraignment detention." *Hill v. Algor,* 85 F.Supp.2d 391, 403 (D.N.J. 2000); *see also Pierce v. Multnomah County,* 76 F.3d 1032, 1043 (9th Cir.1996); *Morrison v. Phillips,* 2008 WL 4308215, *11 fn. 10 (D.N.J. Sept. 16, 2008).

When construing an excessive force claim, this Court must consider whether the defendant troopers' use of force was objectively reasonable under the circumstances, regardless of the their underlying motive or intentions. *Graham,* 490 U.S. at 397. In *Graham*, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997) (*abrogated on other grounds by Curley v. Klem,* 499 F.3d 199 (3d Cir.2007)); *see also Couden v. Duffy,* 446 F.3d 483, 496–97 (3d Cir.2006); *Kopec v. Tate,* 361 F.3d 772, 776–77 (3d Cir.2004); *Doby v. DeCrescenzo,* 171 F.3d 858, 874 (3d Cir.1999) ("Significant factors in evaluating the force used by the police are whether the person being taken into custody is resisting or attempting to resist by flight."); *Ashton v. City of Uniontown,* 459 Fed. Appx. 185, 189 (3d Cir.2012).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (quoting *Graham,* 490 U.S. at 396) ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.). It is also important to consider whether "the physical force applied was of such an extent as to lead to injury." *Mellott v. Heemer,* 161 F.3d 117, 122 (3d Cir.1998) (quoting *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997), *abrogated on other grounds by Curley v. Klem,* 499 F.3d 199 (3d Cir.2007)); *see also Walke v. Cullen,* 491 Fed. Appx. 273, 277 (3d Cir. July 2, 2012).

Additionally, "[r]easonableness is to be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carswell v. Borough of Homestead,* 381 F.3d 235, 240 (3d Cir.2004) (internal quotation marks and citation omitted); *see also Brown v. Cwynar,* 484 Fed. Appx. 676, 679–80 (3d Cir. June 7, 2012).

There is no dispute regarding whether there ever came a need for the use of force against Plaintiff. Indeed, Defendants concede that "[a]t no point did Plaintiff act in any manner that would have required the application of force." Def.'s Br., Doc. No. 96-1, at 3. As such, were a jury to credit Plaintiff's testimony—i.e., that he was lifted roughly, pushed, and that officers raised his arms despite his advising that he could not do so due to physical limitations—it could find that the force alleged to have been used against Plaintiff was unreasonable and therefore excessive.

Rather than challenge the reasonableness of the alleged force, Defendants argue that there is no genuine issue of fact because Plaintiff has only his own testimony in the face of the testimony of all of the Defendants and the investigative reports. While it may be true that Plaintiff's testimony is self-serving, it remains evidence, and "the Supreme Court has made it clear that self-serving testimony may be utilized by a party at summary judgment." *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 501 (3d Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)). Indeed, Plaintiff's testimony is no more self-serving than that of Defendants, on which Defendants rely in their motion. *See id.* Defendants additionally rely on investigation reports relating to the home invasions for which Plaintiff was a suspect. They observe that the reports include information about Plaintiff's detention and that they do not detail any incidents or note any injuries to Plaintiff. It is not for the Court, however, to weigh the evidence or determine credibility on summary judgment. The reports, in and of themselves, do not "blatantly contradict[]" Plaintiff's version of events such that "no reasonable jury could believe" his testimony. *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). The Court therefore finds that

there remain genuine issues of material fact relating to Plaintiff's excessive force claims and summary judgment on these claims will therefore be denied.[1]

### B. Denial of Medical Care

The Court will grant summary judgment on Plaintiff's denial of medical care claim, however. This claim remains only against Defendants Coia and Streater. (*See* Doc. Nos. 44, 45.) Plaintiff alleges that he was denied medical treatment for an allegedly broken rib and torn cartilage.

This Court will rely upon the Fourteenth Amendment in analyzing Plaintiff's denial of medical care claim. *See City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 243–45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); *Hubbard v. Taylor,* 399 F.3d 150, 158 (3d Cir.2005); *King v. Cnty. of Gloucester,* 302 Fed. App'x 92, 96 (3d Cir.2008); *see also Montgomery v. Ray,* 145 Fed. App'x 738, 740 (3d Cir. 2005) ("the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish,* ... i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt") (citing *Hubbard,* 399 F.3d at 158). In *Hubbard,* the Third Circuit clarified

---

[1] Defendants additionally argue that they are entitled to qualified immunity on Plaintiff's claims because Defendants did not use any force against Plaintiff. As discussed, however, there is a factual dispute regarding this issue. Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's excessive force claims. *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009) (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion ... rests on a factual presumption that is inappropriate on summary judgment"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. 399 F.3d at 165–67.

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* at 298.... The Supreme Court did not abandon this bipartite analysis in *Bell,* but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll,* 495 F.3d 62, 68 (3d Cir.2007).

In previous cases, the United States Court of Appeals for the Third Circuit has not applied a different standard than that set forth in *Estelle v. Gamble,* 429 U.S. 97 (1976), (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment. *See Natale v. Camden County Correctional Facility,* 318 F.3d 575, 581 (3d Cir.2003) (citation omitted). This Court will therefore evaluate the Fourteenth Amendment claim for inadequate medical care under the Eighth Amendment standard, set forth in *Estelle,* used to evaluate similar claims.

To establish a violation of the right to adequate medical care under the Eighth Amendment, a prisoner "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003); *see also Estelle v. Gamble,* 429 U.S. 97

(1976). A medical need is serious if it has been diagnosed by a physician as requiring treatment or "if unnecessary and wanton infliction of pain, ... results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.'" *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir.2003) (quoting *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987)).

An official may be found deliberately indifferent where he "knows of and disregards an excessive risk to inmate health or safety." *Natale,* 318 F.3d at 582 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Lanzaro,* 834 F.2d at 347. In addition, deliberately delaying necessary medical care when the delay causes an increased risk of harm constitutes deliberate indifference that is actionable. *Id.; Estelle v. Gamble,* 429 U.S. 97 (1976); *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993); *White v. Napoleon,* 897 F.2d 103 (3d Cir.1990).

Here, Plaintiff has not come forth with evidence establishing that he suffered a serious medical need. Plaintiff alleges that he experienced rib pain and an aggravation to an existing shoulder injury. He testified that he requested to see a doctor because his rib was "messed up." Pl.'s Dep. 66:11-20. Plaintiff has not provided any other evidence regarding the nature and extent of his alleged injuries. Based on the record, Plaintiff's condition at the time he allegedly requested medical assistance did not rise to the level of a serious medical need. Furthermore, Plaintiff's complaint that his rib was "messed up" was not enough to show that Defendants know of, and were deliberately indifferent to, an excessive risk of Plaintiff's health and safety.

Accordingly, Plaintiff cannot sustain his denial of medical care claim and summary judgment will be grant in favor of Defendants Coia and Streater.[2]

## IV.     CONCLUSION

For the foregoing reasons, Defendants motion for summary judgment will be granted in part and denied in part. An appropriate order will be entered.


DATED:  June 12, 2018

                                        s/Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge

---

[2] This finding terminates all claims as against Defendants Coia and Streater.